IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| FAISEL MOHAMED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v.         ) | 2:22cv175-MHT |
| ) | (WO) |
| UNITED STATES OF AMERICA ) | |
| and TOM VILSACK, ) | |
| ) | |
| Defendants. ) | |

OPINION

Following a 2021 denial of his application to participate in the federal Supplemental Nutrition Assistance Program (SNAP), plaintiff Faisel Mohamed filed this lawsuit naming as defendants the United States and its Secretary of Agriculture.[1] He seeks a temporary stay and a judgment setting aside his permanent disqualification from that program, which bars him from participating in SNAP as a food-store vendor.

---

1. Mohamed's complaint does not specify whether he intends to sue the Secretary of Agriculture in his official or individual capacity. Because that question does not affect the analysis below, the court does not further analyze the Secretary's inclusion as a party.

Jurisdiction is alleged under 28 U.S.C. § 1331 (federal question) and 7 U.S.C. § 2023 (judicial review of agency action).

The federal defendants, referred to collectively as the government in the following discussion, now seek to dismiss Mohamed's complaint for lack of subject-matter jurisdiction.[2] For the reasons discussed below, the complaint will be dismissed in full.

## I. STANDARD OF REVIEW

Before the court is the government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). "[A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir.

---

2. While the government's briefing is ambiguous as to its representation of the Secretary of Agriculture, the court construes its motion to dismiss as encompassing Mohamed's complaint against both government defendants.

2

2007).  Factual challenges under Rule 12(b)(1) dispute "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered" by the court.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

In some postures on a motion to dismiss, the facts must be construed in the light most favorable to the nonmoving party.  But when a Rule 12(b)(1) motion to dismiss "raises a factual attack on jurisdiction--the very facts providing cause for jurisdiction are themselves challenged--then no ... presumption [of truthfulness for facts alleged by the nonmovant] exists and the district court is allowed to consider the facts as it sees fit."  *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237–38 (11th Cir. 2002).  Such facts properly include "the complaint supplemented by undisputed facts" in the record, as well as "the court's resolution of disputed facts."  *McElmurray*, 501 F.3d at 1251 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May

3

1981)); *see also id.* (noting the "unique power of district courts to make factual findings which are decisive of jurisdiction" based on "conflicting written and oral evidence").[3]

## II. BACKGROUND

### A. Supplemental Nutrition Assistance Program

The federal government's Department of Agriculture runs SNAP to support the purchase of adequate and nutritional food by low- and no-income people. The program involves coordination with both individuals who enroll in the program to receive food-purchasing support and businesses that are authorized to accept program benefits. SNAP benefits are colloquially referred to as food stamps, which can be redeemed in authorized stores for certain food items.

---

3. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Two types of agency action are relevant to this case: disqualifications and denials.

Stores that violate the statutes and regulations that govern SNAP may be "disqualified" from all future participation in the program. *See* 7 U.S.C. § 2021(a). A store may receive a permanent disqualification on the "first occasion" of any instance of "trafficking in [SNAP] coupons." *Id.* § 2021(b)(3)(B). Trafficking refers to, among other practices, the "buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits ... for cash or consideration other than eligible food, either directly [or] indirectly." 7 C.F.R. § 271.2.

When a store is disqualified under § 2021, notice of that action "shall be issued" to the store. 7 U.S.C. § 2023(a)(1). Such notice "shall be delivered by any form of delivery that the [Agriculture] Secretary determines will provide evidence of the delivery"--and a store "aggrieved by such action" may file a written request for an opportunity to submit information on its

5

behalf "within ten days ... of delivery of such notice." *Id.* § 2023(a)(2), (3). If a store makes that request and submits information, an administrative-review process ensues to produce a final agency decision. If a store disagrees with the disqualification determination, it may file a complaint against the United States "within thirty days after ... delivery or service of the final notice of determination." *Id.* § 2023(a)(13); *see also* 7 C.F.R. § 279.7(a).[4]

A "denial" occurs any time a store's application to participate in SNAP is rejected. The statutory scheme

---

4. There is a credible argument that before filing a lawsuit, a store that receives notice of disqualification must complete the administrative-review process. Judicial review, as provided in § 2023(a)(13), could be read to apply to only final determinations made after the administrative-review process. *Compare* §§ 2023(a)(5) and (12)(subjecting the finality of a determination made through the administrative-review process to judicial review), *with* § 2023(a)(4)(stating simply that disqualification is final if a store does not use the administrative-review process); *see also* 7 C.F.R. § 278.6(n)(foreclosing judicial review unless a written request for review is filed with the agency).

The record is clear here that Mohamed did not exhaust any administrative process before filing this lawsuit.

details what happens when a store is not approved to participate in SNAP; this process parallels the protocol for a disqualification. If "an application of a retail food store ... is denied," such store may begin the administrative-review process by filing "a written request for an opportunity to submit information in support of its position" within ten days of receiving notice. 7 U.S.C. § 2023(a)(3). Again, if the store wishes to challenge a final agency determination in federal court, it must do so within the 30-day time limit prescribed by statute. *See id*. § 2023(a)(13).[5]

### B. Faisel Mohamed

According to Mohamed's complaint, he was previously the co-owner of H & J Supermarket, a food store in

---

5. As with disqualification, it could similarly be argued that a store is required to exhaust the administrative-review process before challenging the denial in federal court. *See supra* note 4 (discussing provisions of 7 U.S.C. § 2023); *see also* 7 C.F.R. § 278.1(p)(providing for direct administrative review but not direct judicial review). And, as stated, the record is clear here that Mohamed did not exhaust any administrative process before filing this lawsuit.

Montgomery, Alabama. That store was approved to participate in SNAP and to accept food stamps as payment for authorized food items. In 2004, a federal case was opened concerning the store's participation in SNAP and a "violation of the food stamps program." Complaint (Doc. 1) at ¶ 18. After an investigation, a property seizure, and further legal proceedings, a federal district court entered an order pursuant to the consent of the parties to resolve the case. *See* Decree of Forfeiture and Warrant of Arrest *in Rem* (Doc. 1-5) at 3-5 (describing the parties' "Stipulation for Compromise Settlement").

Now, Mohamed is permanently disqualified from participating in SNAP based on the 2004 incident, though he maintains that he was not found to have personally violated the rules of the program nor formally charged with wrongful conduct. He also alleges that he did not receive notification from the Department of Agriculture, which administers SNAP, when he was disqualified as a participating vendor. He states in his complaint that

8

he learned of his disqualification only in 2021, when he submitted an application on behalf of a different food store to participate in SNAP and was denied based on the permanent disqualification from 2004.[6]

The government's motion to dismiss alleges additional facts, buttressed with supporting documentation. Mohamed began participating in SNAP through H & J Supermarket in 2002. The government reports that, in June 2003, H & J Supermarket "helped facilitate the purchase of five pounds of marijuana in exchange for $3,2500 [sic] in food stamps." Motion to Dismiss (Doc. 15) at 3. Due to this trafficking violation, the store

---

6. While both parties have represented in their briefing that it is Mohamed himself that has been permanently disqualified from participating in SNAP, *see, e.g.*, Complaint (Doc. 1) at 2,5; Motion to Dismiss (Doc. 15) at 3; Motion to Dismiss, Ex. 1 (Doc. 15-1) at 54, the relevant statutory provisions and agency regulations suggest that it is stores, rather than individuals, that are subject to disqualification. *See, e.g.*, 7 U.S.C. § 2021; 7 C.F.R. § 278.6. However, Mohamed does not challenge his disqualification based on this distinction. Furthermore, the distinction makes little practical difference here because 7 C.F.R. § 278.1(k) arguably requires the agency to deny a store's application if there is evidence that its owner had previously owned another store that was permanently disqualified.

was seized and forfeited. The government asserts that Mohamed received a charge letter informing him that he was being investigated for violating SNAP rules in September 2003; was permanently disqualified from participating in SNAP on October 18, 2004; and was delivered a letter informing him of such disqualification on October 20, 2004. Mohamed did not at that point request an administrative review of his permanent disqualification (though, again, he disputes receiving notice that he was disqualified), nor did he challenge the disqualification in court.

Mohamed applied to participate in SNAP on behalf of a different store in Virginia on November 15, 2021.[7] His

---

7. The government alleges that Mohamed sought to open a store in Texas. Motion to Dismiss (Doc. 15) at 3, 8. However, documents attached to that filing suggest that the store was in Chesapeake, Virginia. *See, e.g.*, Motion to Dismiss, Ex. 1 (Doc. 15-1) at 43, 50, 56. Mohamed does not indicate whether the store was in Texas or Virginia or elsewhere. In any event, the store's location is not material.

Similarly, the government represented that Mohamed's 2021 application occurred on October 15th, but the documents suggest the date is actually November 15th. *See, e.g., id.*, Ex. 1 (Doc. 15-1) at 54.

10

application was denied on November 19, 2021, due to the 2004 permanent disqualification. No party disputes that Mohamed failed to request an administrative review of the 2021 denial decision or of the underlying 2004 permanent disqualification on which it was expressly based.

Mohamed filed the instant lawsuit on April 14, 2022.

### III. DISCUSSION

#### A. Disqualification

Mohamed's complaint seeks to challenge head-on his 2004 permanent disqualification from SNAP. He claims that he received no notice of his permanent disqualification in 2004. If that is true (which the government denies), such lack of notice violated the federal regulations that govern SNAP's administration. *See* 7 C.F.R. § 278.6(b) (requiring a charge letter giving notice of violations and providing an opportunity for oral or written response); *id.* § 278.6(c) (providing for a "notice of determination" to be sent after a permanent disqualification is issued). The government furnishes

11

some record that a notice of determination was delivered to Mohamed in 2004; and the regulations provide that "delivery by any method that provides evidence of delivery of any notice ... constitute[s] notice to the addressee of its contents."[8]  *Id.* § 278.6(o).  As explained above, the government determination of permanent disqualification is final and not subject to judicial review unless a complaint is filed within 30 days.  7 U.S.C. § 2023(a)(13).[9]

---

8. The government attaches to its motion to dismiss an internal record showing entries for "Determination Letter Date" on October 18, 2004, and for "Letter Delivery Date" on October 20, 2004.  Motion to Dismiss, Ex. 1 (Doc. 15-1) at 24.  No further evidence of delivery is furnished nor is any copy of that letter. The court's decision does not turn on whether the letter was indeed delivered to Mohamed in 2004 nor on whether Mohamed first received actual notice of his permanent disqualification in October 2004.

9. The Court need not consider whether Mohamed was also required to exhaust the administrative-review process before filing his complaint in federal court, *see supra* note 4, because it is undisputed that he did not file his complaint within the 30-day statutory time limit.

At the latest, Mohamed had actual notice of his permanent disqualification from SNAP by November 2021. At that point, the record shows--and he concedes--that he received a notice denying his application to participate in SNAP with a Virginia store that was expressly predicated on his prior permanent disqualification.[10] But even taking November 19, 2021 (rather than October 20, 2004) as the approximate "day of delivery of the notice," Mohamed still did not take timely court action to challenge his disqualification. The instant lawsuit was filed in April 2022, roughly five months after he acknowledges receiving actual notice of his permanent disqualification from SNAP. There is no evidence that Mohamed reached out to the Department of Agriculture to challenge the permanent disqualification within ten days, which might have delayed the

---

10. *See* Complaint (Doc. 1) at 2 (The United States Department of Agriculture "informed the plaintiff that he had been permanently disqualified as a vendor in SNAP in 2021 after he had applied to participate in [SNAP] as a SNAP vendor."); Motion to Dismiss, Ex. 1 (Doc. 15-1) at 56.

13

commencement of the 30-day time limit until the administrative-review process produced a final determination. 7 U.S.C. § 2023(a)(5), (13).

In sum, the court lacks subject-matter jurisdiction to consider Mohamed's challenge to his permanent disqualification from SNAP because he did not file his complaint within 30 days of receiving final notice.

### B. Denial

Mohamed's complaint does not suggest that he is also challenging the government's 2021 denial of his SNAP application for the Virginia store. Nonetheless, the government's motion to dismiss addresses jurisdictional issues that bear on any challenge to that 2021 denial. To the extent that Mohamed's complaint may be construed to bring that claim, it must also be dismissed.

Because Mohamed's 2021 denial was expressly based on his 2004 permanent disqualification, he received notice of his denial at the same time in November 2021 that he acknowledges receiving notice of his disqualification.

*See* Complaint (Doc. 1) at 2; Motion to Dismiss, Ex. 1 (Doc. 15-1) at 56. As with disqualification, Mohamed did not "file a written request for an opportunity to submit information in support of [the store's] position" within ten days. 7 U.S.C. § 2023(a)(3). Thus, when Mohamed brought this suit roughly five months after the 2021 denial, well outside the 30-day period prescribed by statute, it was similarly untimely. *See id.* § 2023(a)(13).[11]

Accordingly, the court also lacks subject-matter jurisdiction to consider any challenge to the 2021 denial of Mohamed's application to participate in SNAP on behalf of his Virginia store.

### C. Venue Motion

Finally, because the court resolves the government's pending motion by dismissing the case on a timeliness

---

11. Again, the court does not decide whether Mohamed was required to exhaust the administrative-review process before bringing suit. *See supra* notes 4 and 5.

ground, there is no need to reach the venue issue raised and briefed by both parties.

***

Accordingly, an appropriate judgment will be entered granting the government's dismissal motion and dismissing this case.[12]

DONE, this the 15th day of August, 2023.

                                        /s/ Myron H. Thompson
                                  **UNITED STATES DISTRICT JUDGE**

---

12. Because the parties briefed the timeliness issue as 'jurisdictional,' the court has not independently addressed whether the timeliness issue should be so labeled, for the outcome would be the same regardless.